**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

WESLEY RICHARDSON,

    *Plaintiff,*

v.

UNITED AIRLINES, INC.,

    *Defendant.*

Civil Action No. 16-4749

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    The present matter comes before the Court on two motions: (1) Defendant United Airlines, Inc.'s ("Defendant" or "United")[1] motion to dismiss Counts Seven and Eight of the Complaint for failure to state a claim; and (2) Plaintiff Wesley Richardson's ("Plaintiff") cross-motion for summary judgment of Count Eight. D.E. 11, 25. The motions are opposed.[2] This case concerns allegations that Plaintiff, a former employee of Defendant, was fired in violation of Defendant's Employee Handbook and a Newark Ordinance, among other statutes and regulations. The motions were decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local

---

[1] Initially, Plaintiff also brought this case against United Continental Holdings, Inc. D.E. 1. On October 10, 2016, the parties filed a stipulation dismissing United Continental Holdings, Inc. from the action, without prejudice. D.E. 9.

[2] Defendant's brief in support of its motion to dismiss the Complaint will be referred to hereinafter as "Def. Br." (D.E. 11); Plaintiff's opposition to Defendant's motion to dismiss and cross-motion for summary judgment will be referred to as "Pl. Opp'n" (D.E. 25); and Defendant's reply brief in further support of its motion and in opposition to Plaintiff's cross-motion for summary judgment will be referred to hereinafter as "Def. R.Br." (D.E. 29).

Civil Rule 78.1. The Court has considered the parties' submissions and denies Defendant's motion to dismiss Counts Seven and Eight of the Complaint. The Court also denies Plaintiff's motion for summary judgment of Count Eight.

## I. BACKGROUND

The facts are derived from Plaintiff's Complaint.[3] Plaintiff began working for United in March of 2007, as a customer service representative in United's Philadelphia office. Compl. ¶ 24. During his seven years with United, Plaintiff was promoted four times, most recently to the position of inflight supervisor at Newark Airport. *Id.* ¶¶ 25-31.[4] Plaintiff received numerous positive performance reviews while at United. *Id.* ¶¶ 33-35. For example, in Plaintiff's February 17, 2014 review – Plaintiff's last review before he was fired - United "lauded [Plaintiff's] exceptional performance and work effort," specifically noting that Plaintiff is "tireless in being on the concourse, on aircraft interacting with gate agents, crew schedules and flight attendants to avoid delays while ensuring flight attendants have the tools to provide quality customer service." *Id.* ¶ 34. Additionally, the review stated that Plaintiff "understands both sides of the company, so he has a unique ability to call upon his rapport with whomever he interacts," "really understands

---

[3] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court can also consider "the factual allegations contained in other documents, such as documents referred to in the complaint and matters of public record if the claims in the complaint are based upon those documents." *In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425, 450 (D.N.J. 2000). Therefore, the Court will also consider the employee handbook at issue since it is explicitly cited and relied upon in Plaintiff's Complaint. *See Gil v. Related Mgmt. Co.*, No. 06-2174, 2006 WL 2358574, at *5 (D.N.J. Aug. 14, 2006).

[4] Plaintiff also describes how he applied for, and was denied, the position of inflight assistant manager. *Id.* ¶¶ 36-41. Since the facts of his application process and subsequent denial by United are not relevant to the two counts at issue in this motion, the Court will not recount them here.

2

what it takes to make a team function," "is a great communicator," and has "sincerity" in his "willingness to make [United] the best place to work." *Id.*

Plaintiff suffers from Type II diabetes "that results in him periodically needing to use sick days when [his] symptoms . . . unforeseeably flare up." *Id.* ¶ 43. United was aware of Plaintiff's diabetes. *Id.* ¶ 44. In April 2014, Plaintiff's diabetes made him too ill to work and he called out sick prior to his shift. *Id.* ¶ 45. He remained healthy for the next three months until July 15, 2014, when "the symptoms related to his diabetes returned and he was forced to call out sick prior to his shifts on July 15 and 16." *Id.* ¶ 46. On July 17, 2014, Plaintiff's symptoms subsided and he attended a meeting in Chicago. *Id.* ¶ 47. Subsequently, upon the return of his symptoms, Plaintiff called out sick prior to his shifts from July 19 through July 23. *Id.* ¶ 48. He returned to work on July 27, 2014. *Id.* ¶ 49.

On July 28, 2014, Plaintiff was called into a meeting with Marina Topsis, United's Operations and Administration Manager of Newark Inflight. *Id.* ¶ 54. Ms. Topsis, along with two other managers, demanded that Plaintiff "justify his use of sick days" and advised him that United was investigating his "inappropriate use of a sick call." *Id.* ¶¶ 54-55. Plaintiff informed the three managers that he had been sick because of his diabetes. *Id.* ¶ 56. On August 4, 2014, Plaintiff again met with the three managers, as well as Base Director Kevin Cuminsky, who informed him that United was terminating his employment because of "misuse of flight privileges." *Id.* ¶¶ 58-59. Plaintiff then received a termination letter dated August 13, 2014 (the "Termination Letter"), which claimed the reason for his termination was "inappropriate use of sick call" and "overall performance." *Id.* ¶ 61.

Plaintiff alleges that his termination did not comply with the policies and procedures set forth in United's employee handbook entitled "Working Together Guidelines" (hereinafter the

"Guidelines"). *Id.* ¶ 62. Plaintiff asserts that the Guidelines outline United's termination process. *Id.* ¶ 64. Pursuant to the Guidelines, an employee may be given a Performance Improvement Plan ("PIP") if issues arise with his or her performance. *Id.* ¶ 65. "A PIP provides an employee with guidance and time to improve his or her performance to meet the PIP's objectives." *Id.* ¶ 66. The Guidelines stipulate that managers should consider the employee's length of service and past performance when determining whether a PIP is appropriate. *Id.* ¶ 67. Plaintiff alleges that United did not provide Plaintiff with a PIP at any time prior to his termination. *Id.* ¶ 68. Plaintiff also claims that he had always performed up to United's standards, including the "excellent" performance review just months prior to his termination. *Id.*

The Guidelines additionally provide managers with directions to use "progressive discipline to handle performance issues before making the decision to terminate an employee." *Id.* ¶ 69. The steps of progressive discipline include "coaching and counseling, a verbal warning, a written warning, a termination warning letter and disciplinary or investigatory suspension." *Id.* Plaintiff asserts that United failed to take any of these steps prior to terminating his employment. *Id.* ¶ 70.

Plaintiff also argues that United did not comply with Newark's Sick Leave Ordinance (the "Ordinance"). *Id.* ¶¶ 50-54. Specifically, Plaintiff alleges that the Ordinance requires United to provide a certain amount of paid sick leave, determined through an accrual method, to its Newark employees. *Id.* ¶ 51. United was required under the Ordnance to provide all employees with written notice of the Ordinance, the accrual method, and the employee's right to be free from retaliation for using paid sick leave. *Id.* ¶ 52. Plaintiff claims that United failed to provide Plaintiff with the requisite notice and subsequently terminated him in retaliation for his use of sick leave, both in violation of the Ordinance. *Id.* ¶¶ 53, 112.

Due to these, among other alleged violations, Plaintiff brought the present action.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on August 4, 2016 alleging ten causes of action: (1) disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) retaliation under the ADA; (3) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601; (4) retaliation under the FMLA; (5) sex discrimination, Title VII, 42 U.S.C. § 2000e *et seq.*; (6) violation of the notice requirement of the the "Ordinance", Newark NJ Ord. 16:18-1 *et seq.*; (7) retaliation under the Ordinance; (8) breach of the Guidelines; (9) sex discrimination under the New Jersey Law Against Discrimination ("NJLAD"); and (10) retaliation under the NJLAD. D.E. 1.

In lieu of answering, Defendant moved to dismiss Counts Seven and Eight of Plaintiff's Complaint on October 11, 2016. D.E. 11. Plaintiff opposed United's motion to dismiss, and cross-moved for summary judgment of Count Eight. D.E. 25. On December 28, 2016, United replied to the motion to dismiss and opposed Plaintiff's cross-motion for summary judgment. D.E. 29.

## III. STANDARD OF REVIEW

### i.  Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is *plausible on its face.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose

a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. Syneevey*, 481 F.3d 187, 211 (3d Cir. 2007). Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). If, after viewing the allegations in the complaint in a light most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## ii. Motion for Summary Judgment

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

The showing required to establish that there is no genuine issue of material fact depends on whether the moving party bears the burden of proof at trial. On claims for which the moving party does not bear the burden of proof at trial, the movant must establish "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In contrast, "'[w]hen the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact.'" *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). This affirmative showing requires the moving party to show that "'on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'" *Id.*

7

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). In other words, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

## IV. DISCUSSION

### i. Breach of Contract – Count Eight

In Count Eight, Plaintiff brings a claim for breach of contract premised on United's Guidelines. Comp. ¶¶ 115-123. Plaintiff alleges that the Guidelines created "a reasonable expectation of an employment contract for an indefinite duration that may be terminated only for good cause." *Id.* ¶ 120. Specifically, Plaintiff alleges that the Guidelines "lay out a progressive discipline plan for managers to follow before terminating an employee's employment with [United]." *Id.* ¶ 119. Plaintiff alleges that United, by terminating Plaintiff's employment without good cause and in violation of the Guideline's procedures, breached its contract with Plaintiff. *Id.* ¶ 121.

Defendant argues that Plaintiff's breach of contract claim should be dismissed because the Guidelines do not create an employment contract. Def. Br. at 5. According to Defendant, the disclaimer in the Guidelines notifies Plaintiff that he was an at-will employee with no contractual rights, and, as a result, that the Guidelines were not a contract of employment. *Id.* at 3-4.

8

Defendant concludes that the Guidelines do not alter Plaintiff's at-will employment status and that Count Eight should be dismissed. *Id.* at 5.

Plaintiff responds by opposing Defendant's motion to dismiss, as well as cross-moving for summary judgment on Count Eight. Plaintiff contends that the Guidelines establish a valid employment contract because, among other things, they were widely distributed and failed to contain a clear and prominent disclaimer. Pl. Opp'n at 8-24. At the very least, Plaintiff argues, Defendant's motion to dismiss Count Eight must be denied since his Complaint puts forth sufficient facts to state a claim for breach of contract pursuant to the Guidelines. *Id.* at 36-37.

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine." *Wade v. Kessler Inst.*, 172 N.J. 327, 338 (2002). Therefore, "[a]n employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." *Id.* There are exceptions to the at-will doctrine. For example, in *Woolley v. Hoffman-La Roche*, the Supreme Court of New Jersey held that absent a "clear and prominent disclaimer," an employee manual can confer benefits of employment through an implied contract, thus modifying an at-will employment status. 99 N.J. 284, 285-86 (1985). Specifically, the Court held that "when an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions), the judiciary ... should construe them in accordance with the reasonable expectations of the employees." *Id.* at 297-98 (internal citations omitted); *see also Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 392 (1994) ("The key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectations of the employees."). Since the *Woolley* doctrine is based in contract, it modifies the terms of employment "by imposing

an obligation on the employer to abide by the terms of the manual." *Wade v. Kessler Institute*, 172 N.J. 327, 340 (2002).

Applying *Woolley*, a court must "ask[] whether the relevant manual is written in such 'definite and comprehensive' language to create in an employee's mind a reasonable expectation of enforceable rights." *Gil v. Related Mgmt. Co.*, No. 06-2174, 2006 WL 2358574, at *5 (D.N.J. Aug. 14, 2006) (quoting *Normand v. Goodyear Tire & Rubber Co.*, No. 05-1880, 2005 WL 1657032, *4 (D.N.J. 2005)). However, "even if the 'definiteness and comprehensiveness' of the termination policies are sufficient to create contractual expectations, the employer may still overcome the implied contract by including a 'clear and prominent disclaimer.'" *Id.* (quoting *Normand*, 2005 WL 1657032, at *4).

An effective disclaimer provides notice to the employee that he or she is not a contractual employee and can be terminated with or without cause. *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 413-14 (1994). It must be both a clear statement and very prominently displayed. *Id.* at 413. "The clarity requirement addresses whether the disclaimer indicates the manual was not intended to create a binding obligation." *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 383 (D.N.J. 1999) (citing *Nicosia*, 136 N.J. at 413), *aff'd sub nom. Pepe v. Rival Corp.*, 254 F.3d 1078 (3d Cir. 2001). For a statement to be clear, there can be no confusing legalese, vagueness, or elusive language, and the language must be "such that no one could reasonably have thought the manual was intended to create legally binding obligations." *Warner v. Fed. Express Corp.*, 174 F. Supp. 2d 215, 226 (D.N.J. 2001) (citing *Nicosia*, 136 N.J. at 413).

The prominence requirement "addresses the placement of the disclaimer in the manual and likelihood an employee's attention would be drawn to the disclaimer." *Id.* To be prominent, the disclaimer "must be separated from or set off in a way to attract attention." *Nicosia*, 136 N.J. at

415. For example, "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." *Michaels v. BJ'S Wholesale Club, Inc.*, No. 2-05657, 2014 WL 2805098, at *15 (D.N.J. June 19, 2014), *aff'd*, 604 F. App'x 180 (3d Cir. 2015). In determining prominence, courts consider factors such as typeface, font size, bold text, highlighting, underlining, text color, positioning in the document, and the heading under which it is placed. *See Warner*, 174 F. Supp. 2d at 227; *Nicosia*, 136 N.J. at 415-16. Although these factors are important, "no single distinctive feature is essential *per se* to make a disclaimer conspicuous." *Nicosia*, 136 N.J. at 416.

Defendant asserts the disclaimer[5] is clear because it notified Plaintiff that his employment was at-will and subject to termination without cause. Def. Br. at 4. Defendant also argues that the disclaimer is prominent because it (1) is in the introductory pages of the [G]uidelines; (2) "appears independently" under a bolded heading stating "You Should Know…"; and (3) appears stand-alone under the heading and adequately appraises employees that the Guidelines "are not a contract of employment." *Id.* at 5. Plaintiff responds that this disclaimer is not sufficiently clear or prominent because (1) it contains legalese and is difficult to understand; (2) it is listed on the last page of the introduction; (3) the header does not draw the reader's attention to the disclaimer; and (4) the disclaimer is not set off in any manner that draws attention to it. Pl. Opp'n at 19-22.

---

[5] Defendant's motion to dismiss only addresses the disclaimer and does not argue in any detail about the content of the Guidelines more generally or their legal effect. In Defendant's Reply, it raises arguments concerning whether the Guidelines were an express or implied contract and whether Plaintiff's termination was in accordance with the Guidelines. Def. R.Br. at 12-16. "It is well-established that 'a party cannot raise an argument for the first time in a reply brief.'" *Maliandi v. Montclair State Univ.*, No. 14-1398, 2017 WL 935160, at *5 (D.N.J. Mar. 9, 2017) (quoting *Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001)). Therefore, the Court will only address Defendant's arguments related to the disclaimer as opposed to the Guidelines as a whole.

In the Guidelines, the disclaimer is located on page four of the manual,[6] prior to the table of contents, and it appears as follows:

## You Should Know…

- United is an at-will employer, meaning that a co-worker may end his or her employment at any time. In addition, this policy enables United to modify or terminate at its discretion and without notice or cause, a co-worker's employment status, employment hours and work schedule to fit the overall needs of the organization. The policies in the Working Together Guidelines are not meant to, or should be interpreted to mean to, alter or modify the at-will employment relationship.

- These guidelines are not a contract of employment.

- United reserves the right to amend or discontinue the policies, programs, and guidelines described in the Guidelines at any time. You are responsible for checking on-line for revisions and updates to these guidelines at least quarterly. .

  . . .

- Failure to comply with any of these guidelines may result in disciplinary action up to and including termination of employment.

Def. Br. Ex. B. (D.E. 11-4), at iv.

Turning first to the issue of prominence, the Court notes that the disclaimer is not on the first page. On the other hand, it is also not buried in the middle of the Guidelines. In fact, the disclaimer is found prior to the table of contents of the handbook. While it could have been more prominently placed, its location on page four of the introduction does not place it outside the bounds of the prominence requirement. *See Ruffo v. Wawa, Inc.*, No. 09-5264, 2010 WL 1491714, at *5 (D.N.J. Apr. 13, 2010) (finding a disclaimer on the last page of an employee manual to be an

---

[6] The pages preceding the disclaimer are titled (1) "Using Your Guidelines"; (2) "Your Flight Plan to United's Employee Experience"; and (3) "Questions? We've Got Answers." These pages generally discuss how the Guidelines work and their intended purpose, as well as where an employee can seek additional information. The first page is entitled, "Working Together Guidelines."

effective disclaimer and sufficiently prominent); *Vanderhoof v. Life Extension Inst.*, 988 F. Supp. 507, 518 (D.N.J. 1997) (finding that a disclaimer ten pages into an employee manual was prominent).

Additionally, the title above the disclaimer is set off from the text, and as Defendant notes, appears in a large and bold font. These facts support a finding of prominence. However, all the titles in the Guidelines are set off and use the same font size. In fact, other headers use a darker and more visually prominent bold typeface. *See, e.g.*, "**Focusing on the Future, Delivering Today**[.]" Def. Br. Ex. B. (D.E. 11-4), at 1.

More importantly, the title of the section, "You Should Know …" does not indicate that it concerns a disclaimer, an employee's at-will status, or any other limitation on an employee's employment status. In addition, the title uses the word "should" as opposed to "must" or other similar language indicating its mandatory nature. Thus, the title of the disclaimer fails to indicate that is in fact a disclaimer. *See Theodossiou v. Commerce Bank, N.A.*, No. 06-4137, 2007 WL 1071961, at *3 (D.N.J. Apr. 5, 2007) (finding sufficiently prominent a disclaimer with the heading "AT-WILL STATEMENT IMPORTANT NOTICE"); *see also Frangione v. Twp. of Edison*, No. 06-2046, 2008 WL 2565104, at *6 (D.N.J. June 24, 2008) (finding that the heading "Purpose" preceding a disclaimer was "bland" and "general" and did not attract the reader's attention); *Sellitto v. Litton Sys., Inc.*, 881 F. Supp. 932, 938 (D.N.J. 1994) (finding a disclaimer not prominent in part because "[t]he bland heading 'Note'" preceding it was "particularly inconspicuous").

Defendant also notes that disclaimer contains bullet points that are sufficiently "set aside." This inures to United's benefit. On the other hand, the bullet point list is consistent with the remainder of the Guidelines, which is often comprised of headers and bullet points, numbers, or stand-alone paragraphs. *See, e.g.*, Def. Br. Ex. B. (D.E. 11-4), at 1-12. At other points in the

Guidelines, United uses bold typeface and italics in order to add emphasis. *See, e.g., id.* at iii, 1-2; *cf. Kapossy v. McGraw-Hill, Inc.*, 921 F. Supp. 234, 246 (D.N.J. 1996) ("ironically" the handbook underlines other text, but not the disclaimer). In fact, the Guidelines often highlight a point by placing an additional, bold-faced header to the left followed with italicized text. *See, e.g.*, Def. Br. Ex. B. (D.E. 11-4), at 1-2, 4. No such set off is used in the disclaimer. Thus, the Court finds the disclaimer is not prominent. *Warner*, 174 F. Supp. 2d at 228 ("When the language and placement of a disclaimer is not disputed . . . the sufficiency of the disclaimer can be decided as a matter of law."); *Zawadowicz v. CVS. Corp.*, 99 F. Supp. 2d 518, 535 (D.N.J. 2000) ("The conspicuousness of a disclaimer is a matter of law.").

Looking at the clarity of the disclaimer, it clearly states that employees of United are "at-will." Initially, this inures to United's benefit since "[a]n effective disclaimer must expressly advise its employees that they could be discharged at will. *Spence-Parker v. Del. River & Bay Auth.*, 616 F. Supp. 2d 509, 525 (D.N.J. 2009) (citing *Nicosia*, 136 N.J. at 401). The first line of the disclaimer goes on to define "at-will" by stating that it means "a co-worker may end his or her employment at any time." D.E. 11-4, at iv. "Co-worker" is used throughout the Guidelines, apparently in place of "employee." The word is somewhat confusing because United never defines "co-worker" before using it and it is not clear that employees normally refer to themselves as co-workers. This first sentence indicates that employees can quit at any time.

The next sentence, which concerns United's ability to fire employees, states: "this policy enables United to modify or terminate at its discretion and without notice or cause, a co-worker's employment status, employment hours and work schedule to fit the overall needs of the organization." *Id.* Two parts of this sentence are confusing. First, "this policy" apparently refers an employee's at-will status. But at-will employment is more than a mere policy; it is the prevalent

14

legal relationship between an employer and employee. Second, and more importantly, the final statement makes United's ability to fire at-will ambiguous. "[T]o fit the overall needs of the organization," could reasonably be read to modify the first part of the sentence, which would essentially create a for-cause requirement when terminating employees *i.e.* that United can only terminate employees if doing so would "fit the overall needs of the organization."

While the disclaimer does state that the Guidelines do not modify the at-will doctrine, are not a contract of employment, and that United reserves the right to modify its policies and guidelines, similar language has been found ineffective. *See Nicosia,* 136 N.J. at 414 (finding that characterizing the manual as "not contractual" and "subject to change and interpretation as the sole discretion of the Company" was confusing legalese). Additionally, the last bullet in the "You Should Know" section states that "[f]ailure to comply with any of these guidelines may result in disciplinary action up to an including termination of employment." D.E. 11-4, at iv. This sentence essentially states that not following the Guidelines is a reason for termination. This provision adds additional ambiguity into the disclaimer because it sets forth a for cause standard based on not following the Guidelines while at the same time indicating that the employee is at-will (and, presumably, can be fired even if he does follow the Guidelines).

The Court therefore finds numerous issues with the clarity of United's disclaimer. However, since the Court determined that the disclaimer did not meet the prominence requirement, it does not need to conclusively determine whether the disclaimer is sufficiently clear. *See Keene v. Sears Roebuck & Co.,* No. 05-828, 2007 WL 2701992, at *8 (D.N.J. Sept. 10, 2007) ("In addition to being clear, the disclaimer must also be in a prominent position [to be effective]"). Both prominence and clarity are required.

15

Plaintiff moves for summary judgment on Count Eight, arguing that the Guidelines created an implied contract as a matter of law. However, just because the disclaimer is not effective does not necessarily mean that a valid employment contract was created. To determine whether the Guidelines create a contract, the Court must look to the reasonable expectations of the employees. *Warner*, 174 F. Supp. 2d at 225 ("The 'key consideration' in deciding whether an employment handbook creates an implied contract is 'the reasonable expectations of employees.'") (quoting *Witkowski*, 136 N.J. at 392). "Among the factors bearing on whether an employee may reasonably interpret an employee manual as a contract are 'the definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution.'" *Kapossy*, 921 F. Supp. at 246 (citing *Witkowski*, 136 N.J. at 392). Therefore, reasonableness is often left to the determination of the trier of fact. *See* Witkowski, 136 N.J. at 399 (recognizing difficulty of deciding *Woolley* claims at summary judgment stage); *Sellitto*, 881 F.Supp. at 940 (same); *Labus v. Navistar Int'l Transp. Corp.*, 740 F. Supp. 1053, 1062-63 (D.N.J. 1990) ("[T]he legitimacy of the representations and the reasonableness of the employee's reliance are questions for the finder of fact that are not appropriate for summary judgment.").

There has been no discovery produced in this case. The Court therefore has no information as to many of the key factors that tend to support reasonableness, namely the preparation of the Guidelines and how they were distributed. To be clear, the Court is not concluding that an implied contract exists based on the Guidelines. In fact, the Court notes that there are numerous instances in the Guidelines, besides the disclaimer, where United specifically warns that immediate termination is permissible.[7] Nonetheless, at this stage, the Court finds it premature to rule on

---

[7] *See, e.g.*, D.E. 11-4, at 53 ("In addition to disciplinary terminations, the company may discharge co-workers at will.").

whether the Guidelines created an employment contract. The Court therefore denies Plaintiff's motion for summary judgment on Count Eight.

### ii. Newark Sick Paid Leave Ordinance – Count Seven

Plaintiff also brings a retaliation claim under the Ordinance. Compl. ¶¶ 110-114. He alleges that the Ordinance "prohibits employers from retaliating against employees for using paid sick leave." *Id.* ¶ 111. Plaintiff concludes that "Defendant[] violated the Ordinance when [it] terminated [Plaintiff's] employment in retaliation for his use of paid sick leave." *Id.* ¶ 112.

The Ordinance provides paid sick leave to all private employees working in Newark for at least 80 hours per year if the employee meets certain conditions. *See* Newark, N.J. Ord. § 16:18-3(1)-(6). The Ordinance also provides that "[a]fter an Employee has used Paid Sick Time for 3 consecutive days . . . an Employer *may* require reasonable documentation that the time has been used for a purpose covered by [this Ordinance]." *Id.* § 16:18-4(6) (emphasis added). In such a case, an "[e]mployer may require documentation signed by a health care professional indicating that the Paid Sick Time was necessary." *Id.* It also requires employers to give written notice to each employee at the commencement of their employment "regarding [the] Employee's rights under this Ordinance." *Id.* § 16:18-6(1). Further, the Ordinance forbids an employer from "retaliate[ing] against an Employee because the Employee has properly exercised rights protected under th[e] Ordinance." *Id.* § 16:18-5(2).

Defendant argues that this claim should be dismissed because the Ordinance requires an employee to "properly exercise" his rights, which Plaintiff failed to do by not providing documentation for his sick leave. Def. Br. at 6. Plaintiff responds that United did not request

healthcare documentation, and "the Ordinance [does] not confer an affirmative duty on [plaintiff] to produce healthcare documentation absent a specific request." Pl. Opp'n at 39.[8]

The Ordinance uses permissive language, permitting but not requiring an employer to request documentation from a health care professional. *See* Newark, N.J. Ord. § 16:18-4(6) ("[A]n employer *may* require documentation signed by a health care professional indicating that the Paid Sick Time was necessary.") (emphasis added). Therefore, United was free to request such documentation but the Ordinance does not require Plaintiff to provide it unless first asked. The Complaint merely states that "[t]he managers demanded [Plaintiff] justify his use of sick days." Compl. ¶ 55. Justify does not necessarily indicate providing health care documentation. Instead, it could merely mean that Plaintiff was required to provide United with a valid excuse or reason for his absence. In fact, Plaintiff's response was just that, he explained to the managers that he had been sick because of his diabetes. *Id.* ¶ 55.

Therefore, as pled, the Complaint does not run afoul of the Ordinance. Plaintiff does not allege that United requested the documentation and that Plaintiff failed to provide it. Defendant's motion is denied as to Count Seven.

---

[8] Plaintiff also argues that United cannot claim that he failed to exercise his rights when it never provided him with the required notice. Pl. Opp'n at 37. Since Plaintiff's first argument is dispositive, the Court will not address this issue.

## V. CONCLUSION

In sum, the Court **DENIES** Defendant's motion to dismiss Counts Seven and Eight. The Court also **DENIES** Plaintiff's cross-motion for summary judgment. An appropriate Order accompanies this Opinion.

**Date:** July 17, 2017

_____
JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE